and we want to give a special welcome to Judge Barksdale and the law students who are here with us today on behalf of myself and Judge Newsom and Judge Abudu. I think you're all familiar with the lighting system here, our timing system, but just a quick review. Green means you've got plenty of time. Yellow means you have two minutes left. Red means your time is up. We ask that you please abide by the timing system when the red light goes on. Please stop speaking unless, of course, we have asked you a question. In that case, we do want to hear the answer and so please do go ahead and answer the question and then complete what you were saying. We do ask that you abide by the time limits here so that we can keep everything running smoothly. Alrighty, I see we have some repeat players here from yesterday and we will begin today with United States v. Santoyo. Good morning. My name is Jervis Wise and I represent appellant Felix Santoyo in this case. And members of the court, recognizing the standard of review that applies to the issue we've raised and assuming for purposes of argument that the evidence presented at trial established a material variance between the large overarching conspiracy charge in the indictment and multiple separate smaller conspiracies that were actually proven by the evidence. And given the evidence that was presented, I would suggest this is a prime example of the rimless wheel Kotikos conspiracy that the Supreme Court recognized many years ago in that case. Essentially what happened is we have Michael Ruff at the center. Every other defendant who's charged in the case, every other alleged co-conspirator is working on behalf of Ruff to obtain these paychecks for work that they allegedly didn't do or in the case of my client, work perhaps for hours more than he actually worked. But every one of these defendants is acting independently of one another. They're all working on behalf of Ruff but there's no interdependence whatsoever between each of these other defendants. Isn't that a little hard to believe given the fact that they're all related? Well, I don't believe so, Your Honor. And they're certainly related but there was no evidence presented, for instance, that Felix Santoyo knew anything about paychecks that his sister, for instance, was receiving. And his sister's girlfriend. And his sister's girlfriend, yes. They're certainly related but I don't believe there would have known that they're allegedly carrying out paychecks. Why isn't that a reasonable inference that the jury could have drawn? Well, because there's no evidence suggesting that. There was evidence that they were related, of course, but I don't believe with respect... You don't think it's a reasonable inference from the relationship? I don't believe so given the evidence presented of what's taking place at the court. I don't believe there's any evidence, for instance, that Felix Santoyo was working at the same time any of the other appellants would have been working or any of the other alleged co-conspirators. So, it wouldn't have been reasonable, for example, for the jury to conclude, and I know your client is Felix, but let's just say, for example, that Felicia and Ms. Class, it wouldn't have been reasonable for them to conclude that they knew about what each other was doing when they were intimately involved with each other throughout the period? Your Honor, I don't want to speak for Ms. Santoyo and Ms. Class, but I don't believe so. Given only that they have the familial connection and nothing else, I don't... They're also related to Mr. Ruff. Of course, of course, and I think that's... I mean, don't you think it's unusual that of all the people that he could have selected to be involved in this, that among them were his half-brother and half-sister and her girlfriend? It certainly is, but it doesn't mean that he communicated to, for instance, Mr. Santoyo, hey, I'm doing this with Felicia as well. He wouldn't have needed to have communicated, would he? I mean, that doesn't need to be sort of in-hype verba, you know, word for word. In a typical conspiracy, no, because there are certainly cases that say conspirators don't even need to know about one another. But I think what is significant here is this is really remarkably similar to Chandler, where the court held there must be some interdependence among the conspirators, and we don't have that here. And just simply knowing about one another is not enough, even assuming they did. And there has to be, under Chandler, I believe, interdependence between the co-conspirators who are allegedly carrying out these acts. And there's nothing here that suggests there was. Each one of these people is carrying out Michael Ruff's bidding, I would suggest, but their acts are not, have no bearing whatsoever on the other co-conspirators' acts. But haven't we found co-conspirators' personal relationships with each other to be relevant to this inquiry? It is relevant, but I believe that alone is not enough to establish that there's an interdependent conspiracy taking place. Well, didn't we find, for example, a substantial overlap in the Huff case because the alleged co-conspirators were, quote, good friends and fishing buddies, unquote, and they happened to be engaging in the fraud at the same time? Yes, Your Honor. I believe in that case there was more connecting them. I don't recall the details specifically off the top of my head, but I'd be happy to address that in a letter brief if the court would like. But I believe that it still requires more than simply some kind of connection between the conspirators. I agree. It has to, they have to, there has to be more than just some kind of connection. But, you know, a jury reviewed this, and the jury found that they were involved in a conspiracy together. And we have to view the evidence in the light most favorable to the jury verdict. And so I guess really what I'm asking you for is some reason not to draw the inference that it appears the jury drew here. Why was that not a reasonable inference? Because, Your Honor, the only connection between them was the familial relationship. Nothing else connected what Mr. Santoya was alleged to be doing with any other conspirator. And only two of them even had a familial relationship. But there was nothing connecting them or even suggesting he knew what they were taking place. All right. I'm sorry. He knew what they were doing. Thank you very much, Mr. Wise. And you've reserved two minutes for rebuttal. We'll hear from Mr. Cox. May it please the court, counsel for the government. My name is Jeff Cox. I represent Felicia Santoya in this case. And given the limitations on my time, I wanted to focus primarily on the argument that what was proven at trial in this case was not a single overarching conspiracy. What was proven was, as Mr. Wise indicated, an enterprise with a principal at the center and a number of, and his interaction with a number of members of this enterprise. But it was not a single overarching conspiracy. In this case, I think the seminal case for the court to look to for direction is, in analyzing this case, is Chandler. Chandler, I don't think we could get any more on point on the facts than the Chandler case. The Chandler case was a case right here. It was an indictment that arose out of Jacksonville. And it involved the McDonald's Monopoly conspiracy about 20 years ago. And in Chandler, the court clearly required that there had to be interdependence between the members of the conspiracy. And I believe there has to be proof of that. Referring back to the part of the argument where the court was discussing with Mr. Wise, does there have to be evidence of that? Isn't familial relationship enough to prove for the court to infer? I believe there has to be actual evidence. And I believe Chandler is clear on that. They say it's the government's burden to show interdependence. But Chandler seems pretty different. In Chandler, for example, the winners of the contest there, there wasn't evidence that they all knew the hub conspirator there. Here there is. Not only do they all know him, but with the exception of Class, they're all related to him. And she, Class, is in a relationship with the sister who obviously is related to Ruff. So there's that aspect of it. Then also, unlike the winners that were in the Chandler case, all of the defendants here knew of each other's existence, right? I mean, they knew of each other's existence. They had reason to know they were all receiving fraudulent paychecks from series. You know, it just seems like there are a lot of differences between Chandler and this case. But I mean, maybe I'm missing something here. Another case that I think is instructive on this particular issue is ELAM versus United States versus ELAM, which is 678 F2nd 1234. This is a Fifth District case. In this case, the defendant argued that there wasn't any overarching conspiracy, that this was a hub and spoke situation. Therefore, his conviction should be vacated. And the Fifth Circuit disagreed and upheld his conviction. And in this case, the defendant was arguing that he was basically convicted based on his friendship with the principal, and that wasn't enough. And the Fifth Circuit said, no, there's been more that was shown here. There's been interdependence between the members. Specifically, the members met, including the defendant, met for meetings in furtherance of the conspiracy. The defendant actually hosted meetings at his house in this case. That was the evidence that the Fifth Circuit hung its hat on in this case to uphold his conviction. But I think it's consistent with Chandler and consistent with the argument that there has to be evidence in this case, real evidence. There was none submitted in the trial of our case that the members interacted with each other, communicated with each other in furtherance of any conspiracy. And therefore, I think it's akin to the hub and spoke situation of Chandler. Well, don't you think it would be reasonable for a jury to conclude kind of along the lines of Judge Rosenbaum's comments that especially with Ms. Santoya and Ms. Class, that they're living together, they're in a relationship. This conspiracy went on for several years, and you have money coming into a household that can't be explained otherwise because the hours of work don't match the salary that's coming in. Again, I just think that in terms of our standard of review and the deference to the jury's verdict, that this is a very difficult hurdle for your client to overcome. Referring back to another argument of my brief and the co-defendants' briefs as well, is that these defendants, there was sufficient proof, there was abundant proof that they actually worked at the Port of Tampa. And there was possible proof that Ruff is the principal of this enterprise, may have been padding their hours, but he was in sole control of that. But they did work at the port. There was multiple members, people who had been working at the port for 40 and 50 years. We saw them occasionally. And then you had the evidence of the credit cards or the ATM purchases that were made in Miami when they were supposed to be working in Tampa. Again, the evidence just doesn't really seem to weigh against the jury's conclusion. And I don't want to mix up the issues as far as, even if, as was the case in the Monopoly situation with Chandler, those defendants may have done something that was illegal, but was it part of this, was the overall broad conspiracy proved? And in that case, the court held that it was not. In our case, again, going back to the, which is the core holding of Chandler, there has to be interdependence, some kind of evidence submitted by the government. It's their burden to prove that the defendants, the members of the enterprise worked together in furtherance of the conspiracy. And in our case, similar, excuse me, similar to Chandler, there just simply wasn't any evidence of that. Thank you very much. Thank you. Thank you. All right, we'll hear next from Ms. Sellers. My name is Amanda Sellers and I represent Ms. Class. I will focus on how Ms. Class is different from the other two defendants. First of all, I am, I may be wrong about this, but I do not believe that there was any evidence that Ms. Class and Ms. Santoya were living together. There was evidence that there was a relationship. There was no evidence of the length of the relationship, where they lived, that they were sharing any bank accounts or sharing any bills. None of that came out in the trial that I can recall. Additionally, there were no bank records introduced into evidence that belonged to Ms. Class. The jury did come back with a question as to where the bank records and they were advised that they were not in evidence. And to go back 30 minutes later, they returned a verdict. Was Ms. Class Felicia's fiance? I don't know that anyone testified to that. I don't recall that. I can submit a letter for you. Okay. I guess the point is that if they're in an intimate relationship and if their relationship evolved to the point where they actually wanted to get married, it would be reasonable for a jury to conclude that they shared information regarding their financial status, income, they're going out together, money is coming up that, again, can't be explained. So again, I do think that the relationship was critical here in terms of the jury's conclusion. And I agree. I just don't know that there was a focus on their relationship. No one actually took the stand and said they have been in a relationship for this long. It's this serious. They live together. They share accounts. They share bills. There was no evidence to that extent that came into the trial. I would also add that Ms. Class only worked for 16 days and she obtained an ID for the court on the day or during the month that she started working. So there's no evidence that she was traveling. There's no information regarding her using debit cards at a different time. She did have another job. But the maximum amount of hours that she would have worked in one day, 17, the minimum around 14 on those days that overlap. So Mr. Ruff submitted the W-4s and other employment paperwork for her as well as for Felix and Felicia, right? Correct. It was basically the same MO with respect to Mr. Ruff. Correct, but the amount of hours and years that the Santoyos worked are significantly more than Ms. Class. So I just think that she can be removed to some degree. That relationship or the interdependence would certainly apply to her. I would also submit that... I'm sorry, I lost my train of thought. It's okay. My time's up anyway. That's all right. You do have one minute for rebuttal. So we'll hear from the government now. Good morning, Your Honors. May it please the court. Emily Chang on behalf of the United States Diapole. So first, just to clarify some of the issues that have come up. With respect to Class, there is evidence that they were living together. Both of the Port ID applications from Felicia and Class list the same address. Moreover, Class's coworker, I think that was Wendy Hicks at Design Temp, testified that the two of them shared a car. And so she recalled that one would drive the other. And so that obviously lends itself to the inference that they lived together. You wouldn't have two people living at two separate residences sharing a single car. And as for the question that Your Honor had about whether or not they were engaged, there was one witness who said, well, what is their relationship? And she said, fiance? Girlfriend? So both came out. That's why the record is confusing on that point. But regardless, there is sufficient evidence just to tie up Class's points. She worked 16 days, but she was paid for 200 hours. Well, she was paid an amount that if she were paid at her regular rate at her other job of $14 an hour, that's the equivalent of 200 extra hours. That is a sufficient amount of extra infusion of real money that she should have known. She certainly had reason to know. And the jury had reason to infer that she absolutely knowingly participated in this conspiracy, having that much extra income coming into the household. And same goes for Felicia. That is especially true with respect to Felicia, because they lived together. And the two of them signed for each other's Port ID applications. Class signed to receive Felicia's, and Felicia signed to receive Class's Port IDs. So that suggests, and if you look at the numbers on the Port IDs, they are sequential. So one is like one, and one ends in two, which shows that they were issued back to back. And they applied on the same day, which of course suggests that they were there together, which is a reasonable inference. With respect to these arguments about the rimless wheel, as this court knows, there are three factors for this court to consider. Common goal, nature of the underlying scheme, and overlap of participants. And here, all four of them, Ruff, Felix, Felicia, and Class have a common goal of defrauding Ceres and profiting from it. Moreover, I still could. I mean, we've also said in the ones with multiple conspiracies that you can have an identical goal, and it still doesn't count as one conspiracy. That is true, Your Honor. And that's why there are other factors that must be considered as well. And all three of them weigh in favor of finding a single conspiracy here. Factor two, there are substantial evidence of a single conspiracy based on the nature of the underlying scheme, which had set patterns and practices. Ruff files the false timesheets on behalf of all three. All three apply for port IDs. All three accept payment. And Felix then goes and accepts the 700-hour benefits. Now, that's important because it's interdependence factor. There's overlap of participants, as the court has noted their siblings. Class is a live-in girlfriend. They're all members of the same family. Felicia and Class are signing for each other's port IDs. And then there's cascading timing. So Felix starts working at the port, working, he starts billing at the port back in 2013, years before. And then a couple years pass, and Felicia starts. And then a little while passes, and Class starts. So this suggests that they're testing it out with one family member. He didn't get in trouble. So now the second can come in. She didn't get in trouble. Okay, now we can expand the net. So that all supports the interdependence, especially because if one- On the other hand, they're all gonna come in at different times unless they all come in together. And if they all came in together, you would no doubt argue they all came in together because they all decided they were gonna join it together. So I don't know if we can really say just the mere fact that they came in at different times tells us anything. But that together with the fact that you have concealment. So Felix is told, oh, you qualify for these 700-hour benefits. And he just sits there and accepts them. If this scheme unraveled as to any of them, it would unravel for all of them. And that's exactly what happened. So they depend on each other because they're family. Well, just to be clear, the indictment says that they engaged in meetings, that they made statements essentially to each other to promote and achieve the objective of the conspiracy. Did you have any evidence regarding time and date and location of these meetings and what actually was said? Or as it appears, is your case purely based on reasonable inferences? This case is based on reasonable inferences as often is the case with conspiracy cases as the court knows. And the reasonable inferences that the jury made were based on the facts in the record, which is replete with evidence that they shared this common goal and they were related. Felix and Felicia are twins. So they're reasonable. And Klaas and Felicia live together and they're in a romantic relationship together. So there is ample evidence for the jury to have reasonably concluded that this was a single conspiracy. This is far and away different from Chandler. In Chandler, you have Jacobson in the middle and he's recruiting people to recruit winners to redeem these falsely, these embezzled stamps. But none of the winners even knew that Jacobson had embezzled the stamps. None of them even knew Jacobson. A lot of them didn't know each other. This is, they're just black and white. They're completely different from each other. And Kotiakos, I think was mentioned as well. Same thing. There was no awareness of each other.  If there's anything else the court would like me to address, I'd be happy to. Otherwise, I will cede to the other side. All right. Thank you, counsel. We'll hear again from Mr. Wise. You have two minutes. You're going back to a question that you had asked regarding the Huff case. I believe in reviewing the Huff case, there was additional evidence that the court relied on and finding that there was sufficient evidence to support the conviction beyond the simple good friends relationship in that case. In that particular case, the facts included that the conspirators at issue had visited the site where the fraud is taking place together. I believe it was a supply company. They even ate lunch together. One of the conspirators had placed orders that the second picked up, which was the heart of the actual fraud that was taking place. Well, here we do have, you know, Alicia and Ms. Class signing each other's court applications. There, yes. I would, again, defer to the appellant counsel because I don't believe that bears on Felix Antoi because I don't believe there's any evidence suggesting he would have known or had any participation in that. Again, I would suggest he is the sole... Going back to the order that Ms. Chang mentioned when I said, well, they could have all joined at the same time. I mean, it is interesting this particular sequence in which they joined. First, the brother. Right? Then the sister. And then the fiance who lives with the sister. Right? I mean, it does sort of... Seems like it should allow a reasonable jury to infer from that, you know, the brother was tight with Ruff. That's why he has the 700 hours or however much he has. Then the sister finds out about it and she wants in. And then she's living with Class. Class sees that it's working out pretty well for the sister. And then she wants in. Why isn't that a reasonable inference? I believe it's a reasonable inference for the jury to conclude that that's how Ruff is viewing this. Ruff is seeing, well, this is working with Felix. Let me bring some others in. But the problem, and why it's very similar to Chandler, is there's no evidence suggesting that the family is in on this other than Ruff. I think it's certainly reasonable. Ruff is seeing this is working. Let me bring others in. And that's why it goes back to, again, the rimless wheel. There's nothing suggesting that Felix is doing anything to bring others into this alleged conspiracy. Thank you very much. Thank you. All right. We'll hear again from Mr. Cox. As Judge Abudu pointed out, the indictment in this case alleges that there was meetings and communications between the members of the conspiracy in furtherance of it. And I wanted to clarify that there was no evidence of that at trial. There was no evidence of any meetings or communications. And it seems to me we're talking about reasonable inferences that can arise as a substitute for proof that can arise from people's relationships with one another. And I think that the cases that we've cited suggest that evidence is required of this interdependence between members, of this coordination between members. Otherwise, in the absence of that, I think we have a hub-and-spoke situation with multiple conspiracies and not a single conspiracy, as was alleged in this case. All right. Thank you. And Ms. Sellers. First, I want to address the port applications that was brought up by the government. The port applications themselves were signed by the correct individuals, Ms. Class and Ms. Santoyo. When they were given to Ms. Class and Ms. Santoyo, they switched the applications. So Ms. Class signed the top right-hand side of Ms. Santoyo's and vice versa. So in order to get the identifications, they had to sign at the bottom left of the application. And both those signatures are correct. Additionally, I wanted to point out that there was absolutely no evidence that Ms. Class paid Ruff any money that she made from working at the port. And that was, in fact, what was set forth in the indictment, that it was part of the conspiracy that ghost worker conspirators would and did fraudulently obtain checks and share the proceeds with each other. No evidence to that from Ms. Class. All right, thank you very much. All right, the next case is